

**SIGNED this 17 day of August, 2006.**

```
                                      _____
                                           Marcia Phillips Parsons
                                       UNITED STATES BANKRUPTCY JUDGE
```
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re    JOHNNY ALLEN GRAYBEAL <br> and SHIRLEY SUE GRAYBEAL, <br><br>              Debtors. | No. 05-54100 <br> Chapter 7 |
| MARGARET B. FUGATE, Trustee, <br><br>   Plaintiff, <br><br>vs. <br><br>EQUITY ONE, INC., <br><br>   Defendant. | Adv. Pro. No. 06-5008 |

### **M E M O R A N D U M**

APPEARANCES:

    Margaret B. Fugate, Esq.                              Keith L. Edmiston, Esq.
    Anderson, Fugate & Givens                     Hodges, Doughty & Carson, PLLC
    114 E. Market Street                                      Post Office Box 869
    Johnson City, Tennessee 37604               Knoxville, Tennessee 37901-0869
    *Attorney for Margaret B. Fugate, Trustee*     *Attorney for Equity One, Inc.*

### MARCIA PHILLIPS PARSONS
### UNITED STATES BANKRUPTCY JUDGE

In this adversary proceeding, the chapter 7 trustee seeks the avoidance of the defendant's lien pursuant to 11 U.S.C. § 544, with both parties having now filed motions for summary judgment. For the reasons discussed below, the trustee's motion will be granted. This is a core proceeding. 28 U.S.C. § 157(b)(2)(K).

I.

The debtors Johnny and Shirley Graybeal filed for bankruptcy relief under chapter 7 on October 5, 2005. Their schedules reflected that the debtors owned their residence located at 1240 Virginia Avenue, Bristol, Tennessee; that the property had a market value of $70,000; and that Equity One, Inc. held secured claims on the realty. On January 13, 2006, Margaret B. Fugate, chapter 7 trustee, commenced the instant adversary proceeding against Equity One. The trustee states in the complaint that on February 25, 2000, the debtors secured a loan with Equity One in the amount of $76,250.20 by a deed of trust on their residence and that the deed of trust was recorded but then released. The trustee notes that she has the status of a hypothetical lien creditor as of the commencement of the case pursuant to 11 U.S.C. § 544 and that because Equity One's deed of trust has been released, the trustee has a superior status to, and any lien of, Equity One may be avoided under § 544.

While this adversary proceeding was pending, the trustee filed a motion to sell the debtors' real property, stating that the debtors had vacated the property and requesting that she be permitted to sell the property free and clear of the interests of Equity One, with any such interests attaching to the sale proceeds until resolution of the adversary proceeding. An order was entered February 8, 2006, granting this motion. Thereafter, the property was noticed for a private sale and the trustee is now holding the sales proceeds of $45,000 less the realtor's commission of $2,700.

II.

Presently before the court are the parties' cross motions for summary judgment. Pursuant to stipulations filed by the parties in connection with the motions, it appears that after the debtors executed the initial deed of trust with Equity One, which was duly recorded on March 1, 2000, the debtors executed a second deed of trust in favor of Equity One on March 3, 2000, to secure an

indebtedness of $11,446.50, with this second deed of trust being recorded on March 7, 2000. Subsequently, on December 22, 2000, the debtors executed a third deed of trust in favor of Equity One, to secure a debt of $11,109.17, which was duly recorded on December 29, 2000. All three of the deeds of trust pertained to the same realty, the debtors' residence at 1240 Virginia Avenue in Bristol, Tennessee. On December 28, 2000, a few days after the debtors executed the third deed of trust, Equity One executed a release deed, releasing the first deed of trust dated February 25, 2000, and acknowledging that this debt had been satisfied and discharged. This release deed was recorded on December 29, 2000, the same day that the third deed of trust was recorded. In fact, the documents are filed next to each other in the deed book: the third deed of trust is recorded in Deed Book 475, page 294, in the Sullivan County, Tennessee Register's office; the release deed releasing the first deed of trust is recorded in Deed Book 475 at page 297.

The parties have stipulated that the first deed of trust was released in error and that the Trustee can avoid the lien pursuant to 11 U.S.C. § 544. The parties have also stipulated that with regard to this first deed of trust, Equity One filed a proof of claim in the amount of $79,814.71. The parties note in their stipulations that the debtors scheduled a debt in the amount of $8,682 on a second mortgage to Equity One but that Equity One has not filed a proof of claim for this indebtedness. According to the parties, "[t]he only issue remaining is whether the avoided lien is preserved for the benefit of the estate or whether the second mortgage is now in first position."

The trustee contends that the avoided lien was preserved for the benefit of the estate pursuant to 11 U.S.C. § 551 which provides, "Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate." She correctly points out that this court previously resolved this issue in *First Am. Nat'l Bank v. Miller (In re Miller)*, 286 B.R. 334 (Bankr. E. D. Tenn. 1999).

*Miller* similarly involved real property on which there were first, second, and third deeds of trust, with the first mortgage holder erroneously releasing the first deed of trust after the second and third deeds of trust had been recorded. In an adversary proceeding filed in the mortgagees' bankruptcy case, the first mortgage holder, First American National Bank, sought to set aside the release based on mutual mistake; the second mortgage holder, Bristol Tennessee Electric System

("Bristol Electric"), objected, contending that it held a first priority lien since the first deed of trust had been released; the chapter 7 trustee argued that the interests of the estate were superior to both creditors. In ruling in favor of the trustee, this court first observed that but for the bankruptcy filing, "a court of equity would reform the deed in question to preserve First American's secured position," and that "[b]ecause of this equitable reformation right, First American had an equitable lien on the debtors' residence as of the date of the debtors' . . . bankruptcy filing." *In re Miller*, 286 B.R. at 340-41. This court went on to note that "[n]otwithstanding this equitable lien, a court of equity will not reform a written instrument even upon a showing of mutual mistake if the rights of innocent third parties have intervened." *Id*. at 341. Because a bankruptcy trustee has the status, rights, and powers under state law of a bona fide purchaser of real property, *see* 11 U.S.C. § 544(a)(3), the trustee was deemed to be that intervening third party upon the mortgagee's bankruptcy filing. Accordingly, this court rejected First American's reformation request and concluded that its equitable lien was avoidable by the trustee under 11 U.S.C. § 544(a)(3). *In re Miller*, 286 B.R. at 342-43.

As to Bristol Electric's argument in *Miller* that the prepetition release of First American's mortgage caused Bristol Electric's deed of trust to succeed to first priority position, this court disagreed, concluding that First American's avoided lien was preserved for the benefit of the estate under 11 U.S.C. § 551. *Id*. at 343-44.

> In other words, the trustee steps into the shoes of First American and holds a first priority lien on the debtors' residence in the stead of First American. . . . As noted by the *Wilkinson* court:
>
>> The automatic effect of § 551 would preserve the avoided lien for the estate, thus benefitting the creditors of the estate, including an unsecured claim of the avoided transferee. In effect the application of § 551 prevents creditors who hold subordinate liens from receiving a windfall as a result of the avoidance. Any junior lienholder occupies its original position, as if the first lienholder's interest was not avoided.
>
> *Barclays Am./Mortgage Corp. v. Wilkinson (In re Wilkinson)*, 186 B.R. 186, 192-92 (Bankr. D. Md. 1995). *See also In re Godwin*, 217 B.R. at 543 (equitable lien of first mortgage holder which had been released through bank's internal clerical error was avoided by trustee and automatically preserved for the benefit of the estate); *In re Price*, 97 B.R. at 265-66 (upon avoidance of first deed of trust that was cancelled by

4

mistake, second lien holder did not move into first position since avoided lien was preserved for the benefit of the estate).

*In re Miller*, 286 B.R. at 344.

In the present case, Equity One tactfully urges this court to not follow *Miller* and the cases upon which *Miller* relied, *Godwin* and *Price*, and that, instead, this court should adopt the reasoning of the courts in *Walker v. Elam (In re Fowler)*, 201 B.R. 771 (Bankr. E. D. Tenn. 1986); *Barnett Bank of S. Fla., N.A. v. Weitzner (In re Kavolchyck)*, 164 B.R. 1018 (S. D. Fla. 1994); and *Connelly v. Marine Midland Bank*, 61 B.R. 748 (W.D. N.Y. 1986). According to Equity One, "*Fowler*, *Kavolchyck*, and *Connelly* all hold that an unperfected lien avoided by a trustee pursuant to 11 U.S.C. § 544 and preserved for the benefit of the estate under 11 U.S.C. § 551 does not have priority over perfected security interests existing prior to the filing of the debtor's bankruptcy petition." (Equity One Memo. p. 3.) Equity One maintains that the effect of § 551 is simply to place the trustee in the position of the lienholder whose lien has been avoided, that rather than *enhancing* the lienholder's position, it is simply *preserved* such that if under state law the lienholder's priority position would otherwise be inferior to another lien, the trustee does not prevail. *See In re Fowler*, 201 B.R. at 781 ("[T]he estate obtains no greater rights than the secured creditor possessed."); *Connelly*, 61 B.R. at 750 ("[P]reservation alone does not 'enhance the status of the trustee's lien so that if the avoided liens would have been defeated by the junior claimants while in the hands of the lienholders, they are also vulnerable in trustee's.'"). Applying this principle to the instant case, Equity One asserts that because the first deed of trust was released and therefore unperfected prior to the debtors' bankruptcy filing, the trustee's position is that of unperfected lienholder, inferior to Equity One's junior perfected lien.

Equity One has correctly set forth the holding of *Fowler*, *Kavolchyck*, and *Connelly* and this court does not disagree with the legal principle espoused by those courts: that a trustee only succeeds to the priority status of the lienholder whose lien has been avoided. The trustees in *Fowler*, *Kavolchyck*, and *Connelly* all lost because the lien position of the creditor whose lien they had avoided was inferior under state law to that of another creditor. In the present case, Equity One assumes that under Tennessee law, its perfected second deed of trust would be superior to the first deed of trust, which became unperfected when it was erroneously released. This assumption,

however, is incorrect.

As discussed in *Miller*, but for the bankruptcy filing, the holder of the first deed of trust would have the right under Tennessee law to reform the released deed of trust due to mutual mistake absent the intervention of innocent third parties. *In re Miller*, 286 B.R. at 341 (and Tennessee cases cited therein). A subsequent lien creditor with notice of the first lien is not considered to be such an intervening third party. *Id*. at 342 n.5 (citing *Needham v. Caldwell*, 25 Tenn. App. 189, 154 S.W.2d 535, 538 (1941) (court reformed release by first mortgage holder over objection of second lien holder, noting that the second lien holder had made its loan subject to the first lien, that the second lien holder had not acted to its prejudice in reliance on the release, and that to hold otherwise would unjustly enrich the second lien holder); *W. Fed. Sav. & Loan Ass'n v. Ben Gay, Inc.,* 164 Colo. 407, 436 P.2d 121, 123 (1967) ("Where no one is injured by the mistaken release, and the second lien holder has not changed his position in reliance on the fact that his lien has been advanced to first priority status, the mistake should not afford the junior lienor an unwarranted and unfair advantage to the detriment of the senior lien holder who made the mistake.")). *See also Worley v. White Tire of Tenn., Inc.*, 182 S.W.3d 306, 309 (Tenn. App. 2005) (quoting *Minton v. Long*, 19 S.W.3d 231, 241 (Tenn App. 1999) ("[R]eformation of a deed for mutual mistake 'is an action in equity and will not lie if it affects intervening rights of third persons who actually and justifiably rely upon recorded instruments.'"); *ORNL Fed. Credit Union v. Wilson (In re Wilson)*, 261 B.R. 664, 668 (Bankr. E.D. Tenn. 2001) (citing *Needham* for the proposition that "[t]he 'intervention of third party rights' requires a corresponding injury to or reliance by the third party."); L.S. Tellier, Annotation, *Right to Reformation of Contract or Instrument as Affected by Intervening Rights of Third Persons*, 79 A.L.R. 2d 1180, § 12 (1961) ("[R]eformation of an instrument may be had in equity as against judgment creditors, since they are not regarded as bona fide purchasers for value . . . .").

Although Equity One's notice of the first deed of trust was not stipulated by the parties, the first deed of trust had been recorded and was of record at the time the debtors granted the second deed of trust. *See Marsh v. Fleet Mtg. Group*, 12 S.W.3d 449, 454 (Tenn. 2000) ("A legally registered deed of trust places subsequent creditors and purchasers on constructive notice."). Because the release of the first deed of trust took place after the second and third deeds of trust were

6

granted, there is no indication that Equity One relied upon the release of the first deed of trust in making the subsequent loans to the debtors. *Cf. In re Miller*, 286 B.R. at 342 n.5 ("There is no evidence that Bristol Electric was misled by the mistaken release or acted to its prejudice because of the release.").

The *Miller*, *Price*, and *Godwin* decisions, along with the decision in *Cooper v. Mortgage Investors Corp. (In re Kline)*, 242 B.R. 306 (Bankr. W.D.N.C. 1999), are directly on point with the facts of the case *sub judice*. In each case, as in the present case, the first deed of trust was erroneously cancelled after the second deed of trust was recorded and the second lienholder raised the same argument that Equity One has made. In response, the court in *Price* stated:

> It is true that the Southern deed of trust was cancelled and the real estate record shows that the Planters' lien is first. As between Southern and Planters, however, Southern could rescind the accidentally cancelled deed of trust and maintain the first position. *See Monteith v. Welch*, 244 N.C. 415, 94 S.E.2d 345 (1956). Planters is not a *bona fide* purchaser with respect to Southern's lien. Planters clearly knew of the Southern lien when the Planters' loan was made and did not change its position in reliance on the erroneous cancellation. The trustee may preserve Southern's deed of trust to partially defeat Planters' lien.

*In re Price*, 97 B.R.264, 266 (Bankr. E.D.N.C. 1989). *See also In re Klien,* 242 B.R. at 311; *In re Godwin*, 217 B.R. 540, 543 (Bankr. S.D. Ohio) (both cases concluding, based on *Price*, that second mortgage did not have priority over avoided first mortgage where first mortgage holder would have the right under state law to reform the erroneous cancellation of its mortgage but for bankruptcy filing, debtors executed second mortgage before cancellation of first, and there was no indication that second mortgage holder relied upon cancellation of first mortgage in making its loan to debtors). In contrast, the cases cited by Equity One, *Fowler*, *Kavolchyck*, and *Connelly*, are factually dissimilar because they all involved second mortgage holders who did not have notice of a prior, unperfected lien at the time the second mortgages were granted. Accordingly, they provide no support for Equity One's motion for summary judgment.

### III.

Federal Rule Civil Procedure 56(c) mandates that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together

7

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The parties having stipulated that the trustee can avoid the deed of trust held by Equity One and this court having determined herein that the avoided lien is preserved for the benefit of the estate, the trustee is entitled to a judgment as a matter of law. Contemporaneously with the filing of this memorandum opinion, the court will enter an order granting the trustee's summary judgment motion and denying Equity One's motion.

# # #